1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 23, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARLENE B.,[1]

                Plaintiff,

     v.

ANDREW M. SAUL, the Commissioner
of Social Security,

                Defendant.

No.   4:20-CV-5080-EFS

**ORDER GRANTING PLAINTIFF'S
SUMMARY-JUDGMENT MOTION
AND DENYING DEFENDANT'S
SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Marlene B. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) failing to find a severe impairment at step two, 2) discounting her symptom reports, and 3) failing to consider step three and the remaining steps. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After

_____

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 16 & 17.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

reviewing the record and relevant authority, the Court finds the ALJ's failure to receive evidence from a medical expert as to the onset date of Plaintiff's progressive spinal condition consequentially impacted the denial of benefits. The Court grants Plaintiff's Motion for Summary Judgment, ECF No. 16, and denies the Commissioner's Motion for Summary Judgment, ECF No. 17.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 404.1520(a).

[4] *Id.* § 404.1520(a)(4)(i).

[5] *Id.* § 404.1520(b).

[6] *Id.*

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work she performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 404.1520(a)(4)(ii).

[8] *Id.* § 404.1520(c).

[9] *Id.*

[10] *Id.* § 404.1520(a)(4)(iii).

[11] *Id.* § 404.1520(d).

[12] *Id.* § 404.1520(a)(4)(iv).

[13] *Id.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.  Factual and Procedural Summary

Plaintiff filed a Title II application, alleging an amended disability onset date of April 1, 2013.[18] Her claim was denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Jesse Shumway.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Plaintiff met the insured status requirements through March 31, 2016;

---

[14] *Id.* § 404.1520(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. § 404.1520(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 151-57.

[19] AR 86-88 & 90-92.

[20] AR 36-64.

- Step one: Plaintiff had not engaged in substantial gainful activity since April 1, 2013, the alleged onset date, through her date last insured of March 31, 2016; and

- Step two: Plaintiff had no severe impairments and the following non-severe medically determinable impairments: cervical and lumbar degenerative disk disease, history of GERD, history of hypothyroidism, history of pinworm, vision changes, and obesity.[21]

When assessing the medical-opinion evidence, the ALJ gave great weight to the non-examining opinion of James Irwin, M.D.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those

---

[21] AR 13-27.

[22] AR 21. The ALJ also stated that he gave some weight to the opinions of the "physicians employed by the State Disability Determination Services," who found Plaintiff was not disabled because she did not have a severe medical impairment. However, the only physician offering an opinion was Dr. Irwin. Neither Robert Holt-Mathews, Laura Christiansen, nor Victoria Byington listed medical credentials. AR 21, 68, 73, & 82.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1

2

symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

3

4

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

5

### III.    Standard of Review

6

7

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

8

9

10

11

12

13

14

15

16

[23] AR 20-22.

[24] AR 1-6.

17

18

[25] 42 U.S.C. § 405(g).

19

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

20

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

21

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

22

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and

23

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

### A.    Step Two: Plaintiff establishes consequential error.

At step two of the sequential process, the ALJ must determine whether the claimant suffers from a "severe" impairment, i.e., one that significantly limits her physical or mental ability to do basic work activities.[33] To establish a severe impairment, the claimant must first demonstrate that the impairment results from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical or laboratory diagnostic techniques.[34] In other words,

---

the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[33] 20 C.F.R. § 404.1505.

[34] *Id.* § 404.1521.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

the claimant must establish the existence of the physical or mental impairment through objective medical evidence (i.e., signs, laboratory findings, or both) from an acceptable medical source. The medical impairment cannot be established by the claimant's statement of symptoms, a diagnosis, or a medical opinion.[35]

The ALJ must assess and rate the "degree of functional limitation resulting from [the claimant's] impairments."[36] An impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."[37] Similarly, an impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities, which include: walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.[38]

---

[35] *Id.*

[36] 20 C.F.R. § 404.1520a(b)(2)-(c)(4).

[37] Social Security Ruling (SSR) 85-28 at *3.

[38] *Id.*; 20 C.F.R. § 404.1522(a).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Step two is "a de minimus screening device [used] to dispose of groundless claims."[39] "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."[40]

Here, the ALJ found that Plaintiff had the following medically determinable impairments: cervical and lumbar degenerative disk disease, history of GERD, history of hypothyroidism, history of pinworm, vision changes, and obesity.[41] However, the ALJ found Plaintiff's impairments did not significantly limit her ability to perform basic-work activities for twelve consecutive months and thus did not qualify as severe at step two during the relevant period.[42] The ALJ also found that Plaintiff did not have a cognitive impairment or Alzheimer's disease during the relevant period.

After reviewing the record, the Court finds the ALJ neither sufficiently considered the progressive nature of Plaintiff's spinal condition nor recognized that the only medical opinion of record considered an alleged disability period ending

---

[39] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

[40] *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

[41] AR 19.

[42] AR 19-22.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

about six months too soon. The only medical opinion of record was Dr. Irwin's reviewing opinion.[43] Dr. Irwin opined:

> There is no objective medical evidence of record (MER) showing listing level severity for any medically determinable impairment (MDI). The MER is insufficient evidence from alleged onset date through date last insured (DLI) to establish severity and functional limitations related to alleged MDI's. It could be stated that her spine condition was non-severe through DLI based on 2011 MER.[44]

The 2011 medical evidence included imaging of Plaintiff's lumbar and cervical spine, which revealed mild degenerative change of the lower lumbar spine at L1-L2, L2-L3, and L3-L4, mild disc height loss and osteophytic spurring at T10-T11 and T11-12, and degenerative joint disease at C3-C4 with moderate disc space narrowing.[45] Dr. Irwin also reviewed a subsequent February 2017 MRI of the lumbar spine. That MRI revealed:

- Lower lumbar spondylosis most prominent at L4-L5 and L5-S1 resulting in varying degree of mild to moderate spinal canal narrowing secondary to posterior disc osteophyte complex with superimposed annular tear posterior centrally at L5-S1, and

---

[43] Neither Mr. Holt-Mathews, Ms. Christiansen, nor Ms. Byington indicate they have a medical degree. AR 65-83.

[44] AR 80 (cleaned up).

[45] AR 292-93.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

- Moderate right inferior foraminal narrowing at L5-S1 with some perceived impingement on the undersurface of the exiting right L5 nerve root.[46]

Thus, the imaging indicated that Plaintiff's degenerative disc disease had progressed by February 2017 to what typically would be considered a severe impairment as it involved moderate conditions with impingement. But Dr. Irwin deemed the 2017 MRI "one year after DLI [date last insured]" was insufficient to establish that Plaintiff's spine condition was severe before the DLI of September 30, 2015, used by Dr. Irwin.[47]

The ALJ failed to mention that Dr. Irwin used an incorrect DLI. Dr. Irwin used September 30, 2015, as the DLI. The correct DLI was six months later on March 31, 2016.[48] The Commissioner submits Dr. Irwin's use of a September 30, 2015 DLI had no impact on the ALJ's nondisability decision because the record lacks evidence indicating that Plaintiff's spinal condition was moderately limiting by the correct DLI of March 31, 2016.[49] In contrast, Plaintiff submits that because the record reflects she had a progressive condition—degenerative disk disease—

---

[46] AR 334-35.

[47] AR 80.

[48] *See* AR 79-81 (noting DLI used was September 30, 2015).

[49] ECF No. 20. The Court asked for supplemental briefing on this issue as neither party addressed Dr. Irwin's incorrect DLI in their initial briefing. ECF No. 19.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

dating back to at least 2011 and because she presented with numbness, tingling, pain, and weakness of her lower extremities in January 2017, the ALJ erred by failing to obtain a medical expert to interpret the February 2017 MRI in conjunction with the correct DLI of March 31, 2016.[50]

The Court acknowledges that determining the onset date for progressive conditions is challenging, and that the Court must defer to an ALJ's evidentiarily supported findings.[51] However, an ALJ may not render his own medical opinion.[52] Critically, there is *no* medical opinion as to whether the severe (moderate) spine impairment seen on the February 2017 MRI was present by the correct DLI of March 31, 2016—a date six months after the DLI considered by Dr. Irwin.[53] On this record, which reflects that Plaintiff suffered from a degenerative disc disease

---

[50] ECF No. 21 (citing AR 292 & 322-23).

[51] *See Diedrich v. Berryhill*, 874 F.3d 634, 639 (9th Cir. 2017); SSR 18-01p, at I.B.2 (highlighting that, if more information is needed beyond the then-current medical record or evidence from non-medical sources, the ALJ can call a medical expert to help determine whether the claimant with a progressive impairment met the statutory definition of disability during the relevant period).

[52] *See Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999).

[53] *See generally McBrayer v. Sec'y of Health & Human Servs.,* 712 F.2d 795, 799 (2d Cir. 1983); *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998); *Lester v. Chater,* 81 F.3d 821, 830 (9th Cir. 1995).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

since 2011, remand is required. The Court appreciates that "[e]ven with a medical advisor, the date of onset of [a severe impairment] in this challenging case might . . . remain[] somewhat debatable and mysterious. But with testimony from a medical advisor, at least the ALJ [can] exercise an informed judgment based on medical science."[54] Without more evidence and explanation, the ALJ's step-two error was consequential.

**B.     Plaintiff's Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ failed to provide valid reasons for rejecting her symptom reports. When examining a claimant's symptom reports, the ALJ must make a two-step inquiry. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[55] Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[56] Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the residual functional assessments done at the state

---

[54] *Diedrich*, 874 F.3d at 639-40.

[55] *Molina*, 674 F.3d at 1112.

[56] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036).

agency level, the lack of medical treatment from 2013 to 2017, Plaintiff's high-functioning activities during and after the relevant period, and the objective medical evidence.[57]

First, the ALJ discounted Plaintiff's reported severe symptoms because they were inconsistent with the residual functional capacity assessments done by the state agency. Those assessments indicate that Plaintiff had no severe impairments before her date last insured. However, only one of these state-agency level disability determinations was done by a medical professional, James Irwin, M.D.[58] As explained above, the ALJ failed to discuss that Dr. Irwin considered an alleged disability period ending about six months before the correct alleged relevant disability period. Because of the progressive nature of Plaintiff's spinal condition, the ALJ's finding that Plaintiff's severe symptoms were inconsistent with Dr. Irwin's medical assessment based on a DLI that ended six months too soon was not a clear and convincing reason supported by substantial evidence to discount Plaintiff's reported symptoms.[59]

---

[57] AR 20-22.

[58] Neither Mr. Holt-Mathews, Ms. Christiansen, nor Ms. Byington indicate they have a medical degree. AR 65-83.

[59] *See generally Reddick,* 157 F.3d at 725; *Lester,* 81 F.3d at 830; *McBrayer,* 712 F.2d at 799.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Second, the ALJ discounted the severity of Plaintiff's reported symptoms because Plaintiff offered no "coherent, persuasive explanation for her lack of treatment during the relevant period from April 2013 to her date last insured in March 2016," thereby indicating that her impairments were not as severe as she alleges.[60] A claimant's inadequately explained failure to seek treatment may discredit a disability allegation.[61] Moreover, the length of treatment and frequency of examination are relevant factors for the ALJ to consider.[62] Yet, the ALJ must discuss whether the claimant's articulated reasons for not seeking treatment constitute good cause for not doing so.[63] Here, the ALJ considered the testimony from Plaintiff and her husband that Plaintiff did not receive medical treatment from 2013 to 2017 because she did not have medical insurance and could not afford to pay for it. They explained that they did not seek state health insurance for Plaintiff until late 2016 because 1) in 2015 Plaintiff lived either in Brazil with family or at her husband's daughter's house in New Jersey for several months while her husband dealt with a significant health condition for over a year in New Jersey, 2) Plaintiff and her husband returned to Washington in either late 2015 or early 2016, 3) they did not understand that state insurance was available for

---

[60] AR 22.

[61] *Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).

[62] *See also* 20 C.F.R. § 404.1527(d)(2)(i).

[63] *Fair*, 885 F.2d at 603.

Plaintiff even though her husband had Medicare, 4) they received information and assistance from the Veterans Administration (VA) during the summer of 2016 to understand how to apply for the state health insurance in Washington, and 5) Plaintiff relies on her husband to do the paperwork to obtain health insurance because she speaks English as a second language, does not read English, and only went to school until sixth grade in Brazil.[64] With the assistance of her husband and the VA's guidance, Plaintiff obtained health insurance through the state, effective 2017. Thereafter, she began regularly receiving medical treatment.

The ALJ found these circumstances did not constitute good cause for failure to seek regular medical treatment during the relevant period but the ALJ failed to meaningfully explain and support this reason. The ALJ did not cite to evidence contravening Plaintiff's and her husband's testimony that they did not know how to navigate the health-care system without the VA's guidance, or contravening Plaintiff's assertions that her English capabilities are limited. Moreover, the record is consistent with the testimony that Plaintiff resided out of the country and in New Jersey for a period of time.[65] The record also reflects that, as soon as Plaintiff obtained insurance in 2017, she routinely received treatment. Without a more meaningful explanation or additional evidence, the ALJ's finding that Plaintiff

_____

[64] AR 45-49 & 55-63.

[65] AR 357 (noting that she received medical care in Brazil and New Jersey) & AR 347 (noting that she was moving back to Brazil).

failed to offer a coherent, persuasive explanation for her lack of treatment during the relevant period is not a clear and convincing reason supported by substantial evidence to discount Plaintiff's reported symptoms.[66]

Third, the ALJ discounted Plaintiff's reported symptoms because of her high-functioning activities of daily living during and after the relevant period. If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions similar to those required for work, the ALJ may find these activities inconsistent with the reported disabling symptoms.[67] The ALJ highlighted that, in January 2017 (after her date last insured), Plaintiff cared for her ill husband, had no problems with personal care, made complete meals, swept, vacuumed, did laundry, went outside daily, went out alone, drove, shopped in stores, and managed financial accounts.[68] In order for Plaintiff's cited activities to be high-functioning activities of daily living

---

[66] *See Shirey v. Astrue*, No. 3:09-CV-312-J-JRK, 2010 WL 3190608, at *6 (M.D. Fla. Aug. 11, 2010) (finding the ALJ erred by not addressing the claimant's explanation that she did not have money to visit the doctor on a more regular basis); *Cf. Hammond v. Apfel*, 5 Fed. App'x 101, 104 (4th Cir. Feb. 1, 2001) (finding the claimant failed to explain why he could not afford treatment during the four-year period before his treatment).

[67] *Molina*, 674 F.3d at 1113.

[68] AR 22 (citing 212-19).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

constituting a clear and convincing reason to discount Plaintiff's symptoms, the ALJ needed to more meaningfully articulate this finding. These cited activities, which as Plaintiff described were done in small time increments, do not contradict her claims of chronic headaches, spine pain, radiating arm and leg pain, and memory problems that would limit her ability to sustain full-time work.[69]

Finally, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective medical evidence, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[70] Because the ALJ's other offered reasons for discounting Plaintiff's symptom reports are not supported by substantial evidence or meaningful explanation, this sole reason cannot save the ALJ's symptom-report assessment.[71]

On remand, if the ALJ discounts Plaintiff's symptom reports, the ALJ must more meaningfully articulate the reasons for doing so with citation to supporting evidence.

---

[69] *See Molina*, 674 F.3d at 1112-13.

[70] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[71] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019).

## C.    Remand for Further Proceedings

The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[72] The Court finds that further development is necessary for a proper disability determination.[73] On remand, the ALJ is to obtain medical expert testimony at the hearing to ascertain whether Plaintiff's spinal conditions became severe before the DLI. If Plaintiff had a severe medical impairment before the DLI, the ALJ shall proceed with the remaining disability-assessment steps as appropriate.

## V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of

---

[72] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

[73] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation").

Social Security for further proceedings consistent with this

recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 23rd day of April 2021.

_____

EDWARD F. SHEA
Senior United States District Judge